IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

ROBERT ALEXANDER TUFT            §

VS.                              §     CIVIL ACTION NO. 1:05cv766

DIRECTOR, TDCJ-CID               §

## MEMORANDUM OPINION

Petitioner Robert Alexander Tuft, an inmate confined in the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se*, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## Factual Background and Prior Proceedings

In 2001, following a jury trial, petitioner was convicted of aggravated assault in the 252nd District Court of Jefferson County Texas. He was sentenced to 25 years imprisonment. On May 15, 2003, the Texas Court of Criminal Appeals for the Thirteenth District affirmed the conviction. *Tuft v. State*, No. 13-01-715-CR (Tex. App.--Corpus Christi). The Texas Court of Criminal Appeals refused a petition for discretionary review. *Tuft v. State*, P.D.R. No. 1008-03.

On June 23, 2004, petitioner filed a state application for writ of habeas corpus. The Court of Criminal Appeals adopted the

findings of the trial court and denied the application on April 20, 2005. *Ex parte Tuft*, Appl. No. 60,304-01.

<u>Grounds for Review</u>

Petitioner asserts the following grounds for review: (1) the jury charge was erroneous; (2) he received ineffective assistance of counsel at trial because counsel: (a) failed to request a continuing objection to the admission of a knife and failed to request a limiting instruction; (b) failed to review the prosecution file for similar knives; (c) failed to request a mistrial; (d) failed to object to mischaracterization of evidence; (e) failed to conduct a proper investigation; (f) failed to investigate the remoteness of prior convictions and obtain a ruling concerning admission of evidence; (g) failed to object to a reference to "Bad Bob" in the indictment; (h) failed to object to the prosecution introducing the nickname "Bad Bob" into evidence; (i) failed to object to the jury charge; (j) failed to request a directed verdict and (k) misinformed appellate counsel of petitioner's desire to file a motion for new trial and (3) received ineffective assistance of counsel on appeal because counsel: (a) failed to assist him in filing a motion for new trial and (b) failed to brief issues on appeal.

## Standard of Review

The standard of review applied by federal courts in habeas proceedings challenging a state court judgment is set forth in 28 U.S.C. § 2254(d), which provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

In applying this provision to mixed questions of law and fact, courts should review such questions under the standard set forth in subsection (d)(1).  *Drinkard v. Johnson*, 97 F.3d 751 (5th Cir. 1996).

As used in subsection (d)(1) of Section 2254, the phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers to holdings of the Supreme Court rather than mere dicta.  *Williams v. Taylor*, 529 U.S. 362 (2000).  Further, a decision is contrary to clearly established federal law if the state court:  (a) arrived at a conclusion

opposite to that reached by the Supreme Court on a question of law or (b) decided a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Id*. A decision involves an unreasonable application of clearly established federal law if the state court identified the correct legal principle, but unreasonably applied the principle to the petitioner's case. *Id*. A federal habeas court may not grant relief merely because it believes the state court applied clearly established federal law incorrectly or erroneously. Instead, the court must conclude the state court's application of clearly established federal law was unreasonable. *Id*.

Analysis

*Erroneous Jury Charge*

In its charge to the jury, the trial court defined the terms "intentionally," "knowingly" and "recklessly" as follows:

> Intentionally. A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
>
> Knowingly. A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Reckless.  A person acts recklessly, or is reckless, with
respect to circumstances surrounding his conduct or the
result of his conduct when he is aware of but consciously
disregards a substantial and unjustifiable risk that the
circumstances exist or the result will occur.  The risk
must be of such a nature and degree that its disregard
constitutes a gross deviation from the standard of care
that an ordinary person would exercise under all the cir-
cumstances as viewed from the defendant's viewpoint.

Petitioner alleges the trial court erred by failing to
confine the definitions of the required culpable mental states in
the jury charge to the result of the offense.

Under Texas law, aggravated assault is a result-oriented
offense.  *Sneed v. State*, 803 S.W.3d 833 (Tex.App.--Dallas 1991).
In a result-oriented offense, it is not enough for the
prosecution to prove the defendant engaged in conduct with the
requisite criminal intent.  The prosecution must also prove the
defendant caused the result with the requisite criminal intent.
*Cook v. State*, 884 S.W.2d 484 (Tex.Crim.App. 1994).  As a result,
when the charge defines the culpable mental state in relation to
both the nature of the conduct and the result of the conduct,
rather than limiting its definition to the result only, the
charge is erroneous.  *Id*.

Based on the foregoing, petitioner's assertion that the
trial court erred by failing to confine the definitions of the
required mental states to the result of the conduct is correct.

The prosecution conceded error on this point in connection with petitioner's intermediate appeal. The definitions quoted above should have only referenced the results of petitioner's conduct rather than also referring to the nature of his conduct.

However, in order to obtain relief in this proceeding, petitioner must do more than establish the trial court's charge was erroneous. Improper jury instructions in state criminal trials rarely justify federal habeas relief. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Galvan v. Cockrell*, 293 F.3d 760 (5th Cir. 2001). In examining such a claim, the "inquiry is not whether there was prejudice to the [petitioner], or whether state law was violated, but whether there was prejudice of constitutional magnitude." *Galvan*, 293 F.3d at 764, *quoting Sullivan v. Blackburn*, 804 F.2d 885 (5th Cir. 1986). This, in turn, requires a petitioner to prove that the erroneous instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Id*. at 764-65.

In the application paragraph of its charge, the trial court stated:

> Now, if you believe from the evidence beyond a reasonable
> doubt that in Jefferson County, Texas, on or about October
> 26, 2000, the defendant, Robert Alexander Tuft, did then and
> there, intentionally knowing or recklessly, *cause bodily in-*
> *jury* to Adolph Garcia ... by the use of a deadly weapon,

namely a knife, that in the manner of its use or intended
use is capable of causing death or serious bodily injury,
by cutting complaint with said knife, you shall find the
defendant guilty of the offense of aggravated assault.

(emphasis added).

As the application paragraph of the charge sufficiently

limited the culpable mental state to the relevant conduct

element, the intermediate appellate court concluded petitioner

did not suffer egregious harm from the trial court's failure to

limit its definitions of "intentionally," "knowingly," and

"recklessly" to the result element of the offense.  This court

agrees.  As the trial court instructed the jury it could not

convict unless it concluded petitioner intentionally, knowingly

or recklessly caused bodily injury to the victim, any error in

the trial court's definitions of the required culpable mental

states did not cause petitioner prejudice of a constitutional

magnitude.  *Brown v. Dretke*, 2004 WL 143799 (N.D. Tex. Jan. 22,

204).[1]

---

[1]  Petitioner also asserts the court improperly defined the term "knife"
in the charge.  The court's charge stated:  "Knife means any bladed hand
instrument that is capable of inflicting serious bodily injury or death by
cutting or stabbing a person with the instrument."  However, petitioner has not
provided the court with what he considers to be a correct definition.  Nor has he
explained how the definition used by the court harmed him.  As a result, the
court cannot conclude the definition used by the trial court caused petitioner
harm of a constitutional magnitude.

*Ineffective Assistance of Counsel*

A.   <u>Legal Standard</u>

A claim of ineffective assistance of counsel is reviewed under the standards announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  "First, a defendant must demonstrate that 'counsel's representation fell below an objective standard of reasonableness,' with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance."  *Black v. Collins*, 962 F.2d 394, 401 (5th Cir.) (quoting *Strickland*, 466 U.S. at 688).  Second, if counsel was ineffective, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  A claim of ineffective assistance of counsel will only merit habeas relief when a petitioner satisfies both prongs of the *Strickland* test.  *See Strickland*, 466 U.S. at 687-97.

B.  Application

1.  At Trial

a.  Continuing Objection and Limiting Instruction

Prior to trial, the court granted a motion for discovery filed by petitioner.  The motion included a request to examine objects and tangible things in the possession of the prosecution.

At trial, a knife identified by the victim as being "similar" to the one used during the incident was shown to the jury.  Petitioner states the knife was not produced by the prosecution prior to trial.  He asserts counsel was ineffective for failing to object to the knife being used in violation of the court's ruling on his motion for discovery and for failing to request a limiting instruction.

During trial, petitioner's counsel objected to the introduction of the knife, stating it was the first time he had seen it.  The court overruled the objection and stated the knife was being introduced as being similar to the knife used in the offense, rather than the knife actually used.  In addition, the prosecution stated it was tendering the knife as an exemplar.

Based on the foregoing, it is clear the jury was aware the knife used at trial was not the knife involved in the offense.  Moreover, as the knife was intended to be a demonstrative

exemplar rather than actual evidence, it would not have been covered by the trial court's ruling on the pretrial motion for discovery. As a result, counsel's failure to object on this basis did not fall below an objective standard of reasonableness and, as the jury was not under the impression the knife was the one actually involved in the offense, petitioner was not harmed by its introduction.

###### b. <u>Failure to Review Prosecution File</u>

Petitioner states counsel was ineffective for failing to examine the prosecution's file prior to trial in order to determine whether it contained the "similar" knife that was used at trial.

At trial, the victim testified he picked out the knife used at trial from a group of eight knives shown to him by the prosecutor the morning of trial. As a result, examination of the prosecution file prior to trial would not have revealed the knife used at trial. Further, petitioner has not explained how his defense could have been helped if his attorney had been able to examine the knife prior to trial. As a result, petitioner has not demonstrated there is a reasonable probability the result of the proceeding would have been different if counsel had reviewed the prosecution's file prior to trial.

### c.  Failure to Request Mistrial

At trial, the victim, Adolph Garcia, testified for the
prosecution.  During his testimony, Mr. Garcia, referring to
petitioner, made the statement "after he got out of jail the last
time."  Petitioner states that at this point counsel should have
requested a mistrial or limiting instruction to prevent the jury
from improperly considering petitioner's past incarceration as a
character trait.

Counsel may not have wished to call attention to Mr.
Garcia's statement by making an objection and requesting a
limiting instruction.  In addition, when petitioner testified he
admitted to have previously been convicted of four crimes.  As a
result, it cannot be concluded counsel's failure to seek a
mistrial or a limiting instruction fell below an objective
standard of reasonableness or that petitioner suffered prejudice
as a result of such failure.

### d.  Failure to Object to Mischaracterization of Evidence

As stated above, the prosecution introduced a similar knife
as demonstrative evidence.  During his examination of the police
officer, the prosecution asked whether the similar knife was
capable of causing serious bodily injury.  The officer stated the
knife could cause serious bodily injury.  Petitioner states

counsel should have objected to what petitioner believes was a mischaracterization of the demonstrative evidence as real evidence.

The court is unable to see how the officer's statement was a mischaracterization of the evidence. As described above, the jury was made aware the knife introduced into evidence was not the knife that actually was involved in the offense. The officer merely stated that the knife shown to him could have caused serious bodily injury. Counsel's performance on this point did not fall below an objective standard of reasonableness and did not prejudice petitioner.

e. <u>Failure to Investigate</u>

Petitioner asserts counsel failed to conduct an adequate investigation prior to trial. He states counsel failed to do the following: (a) visit the scene of the incident; (b) interview Joe Congora, Sherri Murphy and Michael Sutton; (c) interview Terry Slaughter and (d) issue a subpoena for Pat Roy.

With respect to his first point, petitioner states that if counsel had visited the scene of the incident, he would have been in a better position to cross-examine Kenny Rogers. Mr. Garcia, the victim, lived in Apartment Number 1. Mr. Rogers testified he lived in Apartment Number 2. He stated he was home on the night

of the incident and heard people arguing in Mr. Garcia's apartment. He also heard something fall. He then walked out of his apartment towards Mr. Garcia's door, which was open. When he arrived to where he could see into Mr. Garcia's apartment, he saw Mr. Garcia lying on the floor while petitioner stood behind him "kicking him real hard." Mr. Rogers stated he approached Mr. Garcia's door and told petitioner to stop. Petitioner then closed the door. Petitioner later came out of the door at the request of Mr. Rogers. Mr. Rogers stated petitioner had a knife in his right hand when he came out of the apartment. He stated he had not seen the knife when he initially looked into Mr. Garcia's apartment from down the hallway.

Petitioner states a visit to the scene of the incident would have enabled counsel to attack Mr. Rogers' testimony as being inconsistent with the physical layout of the apartments and the hallway. However, the diagram submitted by petitioner does not convince the court that the physical layout made it impossible for Mr. Rogers to have seen what he states he saw. The court therefore cannot conclude there is a reasonable probability petitioner would have been acquitted if counsel had visited the scene of the incident.

With respect to petitioner's remaining points, petitioner testified at trial that approximately five years prior to the incident, Mr. Garcia came into his apartment with a machete and stuck it in the door while petitioner was sitting "right next to the door."  Petitioner states Mr. Congra, Ms. Murphy and Michael Sutton witnessed that event and would have testified about it if called.  He also states Ms. Slaughter, his former wife, would have testified that the nickname "Bad Bob" came from petitioner's work as a tatoo artist.  He states he used the nickname as his signature to tatoos.  He states she would have also testified about a prior altercation between petitioner and Mr. Rogers.  Finally, petitioner states Ms. Roy, who owned the bar where Mr. Garcia was drinking prior to the incident in question, would have testified that she had known the victim for more than 20 years, was familiar with his violent manner and had barred him from her place of business on several occasions.  Petitioner states counsel spoke to Ms. Roy prior to trial, but failed to issue a subpoena to compel her to testify.

"[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."  *Buckelew v. United States*,

575 F.2d 515, 521 (5th Cir. 1978). Where "the only evidence of a missing witness's testimony is from the defendant," claims of ineffective assistance are viewed with great caution. *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983), *cert, denied*, 467 U.S. 1251 (1984). In addition, "[i]n order for the [petitioner] to demonstrate the requisite *Strickland* prejudice, the [petitioner] must show not only that [the] testimony would have been favorable but also that the witness would have testified at trial." *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

Petitioner had not demonstrated Ms. Murphy, Mr. Sutton, Ms. Slaughter and Ms. Roy would have been available to testify at trial or supplied anything more than his assertion of what their testimony would have been. As a result, he has not shown he suffered prejudice as a result of counsel's alleged failure to interview them, in the case of Ms. Murphy, Mr. Sutton and Ms. Slaughter, and call them to testify. Petitioner does state Mr. Congra was at the courthouse on the date of trial. However, as Mr. Congra was not an eyewitness to the main incident at issue and would only have testified about an event relatively remote in time to the incident in question, the court is unable to conclude

there is a reasonable probability petitioner would have been found not guilty if Mr. Congra had been called to testify.

    f.  <u>Use of Prior Convictions of Petitioner</u>

    At trial, petitioner testified concerning a conviction for marijuana possession in Illinois during the 1970s, a conviction for use of a controlled substance in Texas in 1986 and two prior federal convictions.  He stated he was released from custody in 1997 following his later federal conviction.  He now states the first federal conviction occurred in 1988 and the second conviction occurred in 1996.  He states an investigation by counsel would have revealed that reference to his first three offenses would have been barred by Texas Rule of Evidence 609.  Rule 609 states that evidence of a conviction is not admissible if a period of more than 10 years has elapsed since the date of the conviction or of the release of the individual from confinement, whichever is the later date.  Petitioner states counsel was ineffective for bringing the prior convictions up and for not filing a pretrial motion *in limine* to prevent the prosecution from bringing them up.

    At first glance, petitioner's point might appear to have merit.  However, a review of the transcript reveals that given the nature of petitioner's second federal conviction, which was

admissible under Rule 609, counsel may well have appropriately decided it was in petitioner's best interest to also reveal his other convictions. Petitioner's second federal conviction was based on his escape from a halfway house where petitioner was confined as a result of his first federal conviction. The first federal conviction was based on petitioner's failure to note he had a prior felony conviction when filling out a form prior to buying a firearm. As petitioner's second federal conviction was for escape, the jury, on being told of the conviction, might have wondered why he had been incarcerated. Counsel could have properly determined it was better to inform the jury that he had been incarcerated as a result of a nonviolent offense. Counsel could also have properly determined that as explaining petitioner's first federal offense would have required admitting petitioner had previously been convicted of a felony, informing the jury that the prior felony was also for a nonviolent offense would have been better than allowing the jury to speculate as to what the prior felony conviction was. Further, counsel may have also properly determined that the marijuana conviction should be revealed in order to show the jury petitioner was not attempting to conceal his past and intended to be forthright in his testimony. Based on the foregoing, the court is unable to

conclude counsel's performance on this point fell below an objective standard of reasonableness.[2]

g.  Failure to Object to Use of "Bad Bob" in the Indictment

Petitioner states his full name was used in the indictment and that there was no need to include his nickname of "Bad Bob" in the indictment.  He states the use of his nickname was designed to illustrate petitioner's bad character and that his attorney should have objected to the use of the nickname. Petitioner states that if petitioner's counsel had objected to the use of this term in the indictment, the grand jury might not have returned an indictment.

Petitioner's attorney would not have been permitted to review the indictment prior to its being returned.  As a result, counsel's performance on this point did not fall below an objective standard of reasonableness.

---

[2]  Petitioner also states an investigation by counsel would have revealed that prior to his first federal conviction, his right to possess firearms had been restored under Illinois law.  He states revealing this to the jury would have demonstrated petitioner had not known he was barred from buying a firearm at the time he attempted to make his purchase.  However, as petitioner was nevertheless convicted of giving false information while attempting to acquire a firearm, the court is unable to conclude there is a reasonable probability the result of the proceeding would have been different if petitioner had testified about the restoration of his right to buy firearms.

h. <u>Failure to Object to Prosecutor's Reference to "Bad Bob"</u>

While questioning a police officer who was summoned to the scene of the incident, the prosecutor asked, "When you arrived did you-all have occasion to talk to an individual identified as Kenneth Rogers and get a description of an individual known as Bob or Bad Bob?"  Petitioner states counsel should have objected to the prosecutor's use of the term as inflammatory and as improper use of character evidence.

On cross-examination, petitioner testified he had "Bad Bob" written on his hat and embossed on his belt and cigarette lighter.  He stated he had not acquired the name while in the penitentiary, but that the name had been given to him in appreciation for his work as a tatoo artist.  In light of the explanation offered by petitioner at trial, and as no evidence was introduced to demonstrate the nickname was given petitioner as a result of violent or illegal conduct, the court cannot conclude there is a reasonable probability petitioner would have been acquitted if the nickname had not been used at trial.

i.  <u>Failure to Object to Charge</u>

Petitioner states he received ineffective assistance with respect to the jury charge because counsel:  (a) failed to object to the court's failure to confine the definitions of the required

the culpable mental states to the result of the offense and (b) failed to object to the definition of the term "knife."

The court previously concluded the definitions provided for the terms "knowingly," "intentionally" and "recklessly," while erroneous, did not cause petitioner to suffer harm of a constitutional magnitude.  For the reasons set forth above, the court also believes there is not a reasonable probability petitioner would have been acquitted if the correct definitions had been used and that, as a result, petitioner did not suffer harm in a *Strickland* sense.

With respect to his second contention, petitioner states the definition used by the trial court for "knife," which was set forth above, was incorrect.  However, as also set forth above, petitioner has not provided what he considers to be a correct definition of "knife" or demonstrated how the definition used caused him prejudice.  As a result, there is not a reasonable probability an objection by counsel to the definition would have resulted in an acquittal at trial or a reversal on appeal.

j.  <u>Failure to Request Directed Verdict</u>

Petitioner states counsel was ineffective for failing to request a directed verdict because the prosecution failed to

produce evidence that the knife used in the offense was capable
of causing serious bodily injury.

This contention is without merit.  During trial, a knife
similar to the one used during the offense was introduced into
evidence.  The police officer who was called to the scene
testified the similar knife was capable of causing serious bodily
injury and, under certain circumstances, death.  This evidence,
was sufficient to establish the knife used in the offense was
capable of causing serious bodily injury.  *Singleton v. State*,
1997 WL 804247 (Tex.App.--Hous. (1 Dist) Dec. 19, 1997).  As a
result, counsel was not ineffective for failing to request a
directed verdict and, as such a request would have been denied,
petitioner suffered no prejudice because a directed verdict was
not sought.

k.  <u>Misinformed Appellate Counsel Regarding Petitioner's
Desire to File a Motion for New Trial</u>

Petitioner states that at sentencing, trial counsel informed
the court of his intention to withdraw from this matter.
Petitioner told the court he wanted to file a motion for new
trial.  The court ordered trial counsel to file a notice of
appeal and stated it would appoint another attorney to handle the

appeal.  The court also stated appellate counsel could file a motion for new trial.

Petitioner states he did not discover appellate counsel had been appointed until after the deadline for filing a motion for new trial expired.  He states no one notified appellate counsel of his desire to file a motion for new trial.  Petitioner states trial counsel told appellate counsel the trial was "pretty clean" with few points to appeal.  Petitioner states he wanted to file a motion for new trial in order that issues regarding ineffective assistance of counsel could be developed for consideration on appeal.

Petitioner does not state he wished to raise any issues regarding ineffective assistance of counsel other than those set forth in his petition.  As these issues have been found to be without merit, there is not a reasonable probability a motion for new trial would have been granted.

  2.  <u>Ineffective Assistance of Counsel on Appeal</u>

  a.  <u>Appellate Counsel's Failure to Assist Petitioner in Filing a Motion for New Trial</u>

Petitioner also asserts he received ineffective assistance of counsel because appellate counsel failed to assist him in filing a motion for new trial.

In connection with petitioner's state application for writ of habeas corpus, appellate counsel filed an affidavit which provides, in part, as follows:

> First, at the time of the appointment I was unaware of the desire by the Applicant to file a Motion for New Trial, in which he desired to add extrinsic evidence to the record based on allegations of ineffective assistance of counsel. By the time I went to see Applicant at the County Jail, he has been transported to TDCJ. Based on Applicant's correspondent and the reading of the record, which was not received until several months later, it was apparent that Applicant and the Court expected that I file A Motion for New Trial. In an attempt to get back to the Trial Court I filed a Motion to Abated in the Court of Appeals outlining what had happened. This Motion was denied. Applicant was denied the ability to make a record of Trial Counsel's purported acts of ineffectiveness by my failure, however unintentional, to file a Motion for New Trial.

Based on this affidavit, it is clear appellate counsel did not assist petitioner in seeking a new trial. However, as stated above, the allegations of ineffective assistance petitioner wished to raise in his motion for new trial are without merit. Accordingly, petitioner suffered no harm as a result of appellate counsel's failure to assist him in filing a motion for new trial.

b. <u>Appellate Counsel's Failure to Brief Issues on Appeal</u>

Petitioner asserts appellate counsel was ineffective because he failed to raise arguable issues, failed to cite directly controlling precedent and failed to conduct a proper "harm analysis."

With respect to the first two points, petitioner has failed to identify the issues appellate counsel should have raised or identify the cases counsel should have cited.  The court is therefore unable to conclude counsel was ineffective with respect to these two points.

With respect to the third point, appellate counsel raised the issue regarding the trial court's definitions of "knowingly," "intentionally," and "recklessly" which was described above.  In considering the harm petitioner suffered as a result of the definitions, the intermediate appellate court stated the portion of appellate counsel's brief concerning the harm suffered was insufficient to establish petitioner suffered egregious harm.  Despite this statement, the appellate court nevertheless considered the issue and determined petitioner had not suffered egregious harm.  As the appellate court considered the point despite counsel's insufficient briefing, and as this court, after considering petitioner's arguments regarding the harm he suffered as a result of the definitions, is also of the opinion petitioner did not suffer egregious harm, there is not a reasonable probability the result of petitioner's appeal would have been different if better briefing had been provided on this issue.

<u>Conclusion</u>

For the reasons set forth above, this petition for writ of habeas corpus will be denied. A final judgment shall be entered in accordance with this memorandum opinion.

**SIGNED** this the **10** day of **March, 2009.**


Thad Heartfield
United States District Judge